UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRYCO, LLC, an Illinois limited-liability company; and PORTABLE HVAC EQUIPMENT, INC., a Georgia corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ABM INDUSTRIES, INC., a Delaware corporation, <br><br> Defendant. | Case No. 07 CV 0069 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute over equipment and job estimates related to hurricane restoration work in the aftermath of Hurricane Ivan, causing catastrophic damage in the Cayman Islands in 2004. Before the Court is the Motion for Summary Judgment of Defendant ABM Industries, Inc. ("ABM"). (Docket No. 75.) For the reasons stated below, the motion is denied in part and granted in part.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488,

1

492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). That is, the non-moving party must "present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## BACKGROUND

The following background facts, viewed in the light most favorable to Plaintiffs, are derived from the parties' filings of record, including their filings required under Local Rule 56.1. Material factual disputes between the parties are addressed in the analysis section below.

Dryco, LLC ("Dryco") is an Illinois limited-liability company in the business of structural drying, dehumidification, and document, file and media recovery from damage due to flooding and other types of moisture saturation. Portable HVAC Equipment, Inc. ("PHVAC") is a Georgia corporation in the business of sales and rental of HVAC equipment for commercial, industrial, and construction applications.

ABM is a Delaware corporation, licensed to do business in Illinois, that was doing business out of California at times relevant to this dispute. ABM provides janitorial, parking, engineering, security, lighting and mechanical services from commercial, industrial, institutional, and retail facilities in hundreds of cities across the United States and British Columbia, Canada.

In September 2004, Hurricane Ivan swept through the Cayman Islands, causing catastrophic damage from flooding and water saturation. In late 2004, James Hennesey traveled to the Cayman Islands with his business associate, Kurt Swanson, for the purpose of obtaining business opportunities in the wake of the hurricane's destruction.

After arriving in the Cayman Islands, Hennesey contacted Derrick Watson, an employee of Dryco, for the purpose of obtaining from Dryco structural drying services. Watson referred Hennesey to Tony Gallagher, an employee in Dryco's main office in Northlake, Illinois. Dryco determined that in order to provide the services requested by Hennesey, Dryco would also need to use the services of PHVAC. Gallagher thereafter contacted PHVAC to assist with providing the services. David Vogelsang of PHVAC agreed to work with Dryco to provide the services requested by Hennesey.

In late 2004, Vogelsang and PHVAC's engineer, Robert Holdridge, traveled to Grand Cayman and met with Hennesey, visiting various locations requiring drying services. Hennesey told Vogelsang and Holdridge that he (Hennesey) had the inside track on getting the contracts to provide the structural drying services for these locations. Hennesey told Plaintiffs' employees that he was working for "ABM" and tendered a business card, furnished by ABM, that bore the following information: that Hennesey

was a district manager for a subsidiary of ABM and that he was part of "The ABM Family of Services." The business card also displayed ABM's registered trademark and referenced ABM's website, www.abm.com. (Pltfs. Statement of Additional Facts, ¶ 14). In addition, the card listed other ABM subsidiary companies. (Def. SMF, ¶ 9.) Further, ABM allowed Hennesey to use ABM's trademarks on his stationery, shirts, uniforms, trucks and other business items. (Pltf. SMF, ¶ 15.) However, Hennesey was not an employee of ABM but, rather, was an employee of American Building Maintenance Co. of New York ("ABM-NY"), a wholly owned subsidiary of ABM. (Def. SMF, ¶ 1.) Hennesey, Swanson, and another business associate of Hennesey, Albun Whitaker, officially conducted their business in the Cayman Islands through and on behalf of a Caymanian corporation called CI Restore, Ltd. ("CI"). CI, which is not owned by ABM, was set up for the purpose of doing business in the Cayman Islands. (Def. SMF, ¶ 11; Pltf. SMF, ¶ 24.) CI's business application listed the start of its operations as November 9, 2004. (Pltf. SMF, ¶ 24.)

Vogelsang and Holdridge, on behalf of Plaintiffs, spent three to four hours at every site to which they were taken by Hennesey, taking readings, measures, and discussing the best methods and protocols to develop "scopes" for the work that needed to be done. Vogelsang and Holdridge then compiled "scopes of work for the restoration work" and sent them to Dryco for preparation of estimates. (Pltf. SMF, ¶ 38.)

Hennesey told Plaintiffs that the end-customers would not sign contracts or make down payments until the customers could be sure that drying equipment for the jobs was already transported to Grand Cayman. Accordingly, Plaintiffs sent their equipment to the

Cayman Islands. (Pltf. SMF, ¶ 23.) Once Plaintiffs' equipment arrived, however, Hennesey refused to sign work-authorization paperwork regarding the equipment tendered by Plaintiffs. (Pltf. SMF, ¶ 27.) Therefore, Plaintiffs refused to release their equipment to Hennesey, and ABM was not able to use it. (Pltf. Res. to Def. SMF, ¶ 17.) Ultimately, Hennesey and ABM contracted with another firm to conduct the structural drying projects; and Plaintiffs' equipment was impounded by Cayman Islands customs officials for more than six months, causing Plaintiffs' damages.

Plaintiffs seek to recover damages from ABM pursuant to two causes of action. Count I asserts a claim for promissory estoppel, alleging that Plaintiffs relied, to their detriment, on the promise by Hennesey that if Plaintiffs shipped their structural drying equipment to the Cayman Islands, Plaintiffs would perform the structural drying services discussed with Vogelsang. Count II asserts a claim for misappropriation of trade secrets pursuant to 765 ILCS 1065 *et seq.* Count II alleges that Vogelsang and PHVAC produced confidential compilations and custom engineering specifications for the structural drying projects that incorporated and constituted trade secrets of Dryco and PHVAC and that ABM misappropriated the trade secrets by acquiring them through improper means and using them in performing structural drying projects in the Cayman Islands.

## ANALYSIS

ABM argues it is entitled to summary judgment on Plaintiffs' Complaint. First, ABM argues that it is not liable to Plaintiffs on any cause of action because none of the individuals involved in the alleged conduct in the Cayman Islands – Hennesey,

Swanson, and Whitaker – were neither agents nor had any authority to act on behalf of ABM. Rather, ABM contends, Hennesey was an employee of ABM-NY, a wholly owned subsidiary of ABM; and Hennesey, Swanson and Whitaker conducted operations in the Cayman Islands through a completely different corporate entity, CI, which was not owned by ABM or any of its subsidiaries.

However, material issues of fact exist as to whether ABM is liable for the representations and conduct of Hennesey.

Under Illinois law, a principal will be bound not only by the authority that it actually gives to another but also by the authority that it appears to give under the doctrine of apparent authority. Apparent authority arises when the principal creates, by words or conduct, the reasonable impression in a third party that the agent has authority to perform a certain act on its behalf. *ABN Amro, Inc. v. Capital Intern. Ltd.*, 595 F.Supp.2d 805 (N.D. Ill. 2008). Apparent authority is not created by the words or conduct of the purported agent himself. *See Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1061, 1064 (7th Cir. 2000).

Although ABM denies that Hennesey was its employee or had any authority to act in any manner on its behalf, Plaintiffs have submitted evidence sufficient to raise a material issue of fact as to whether Hennesey had apparent authority to act on behalf of ABM. Specifically, Plaintiffs submit evidence that ABM allowed Hennesey to use its trademarks on various business materials and supplies, such as stationery, shirts, uniforms, trucks and other business items, and that ABM furnished to Hennesey business cards to use, indicating that Hennesey was affiliated with "ABM" and "The ABM Family

of Services." (Pltf. Ex. F.) Although ABM relies on the fact that the actual entity that employed Hennesey was ABM's wholly subsidiary, ABM-NY, ABM's conduct in allowing Hennesey to use its trademarks and a business card referencing ABM, "The ABM Family of Services," and the representations in this regard on ABM's website is sufficient to create a triable issue as to whether ABM created, by words or conduct, the reasonable impression that Hennesey had authority to act on its behalf and not merely on behalf of the ABM subsidiary that officially employed Hennesey.

ABM cites *Schoenberger v. Chicago Transit Authority*, 405 N.E.2d 1076 (Ill. App. 1980) (*Schoenberger*), for the proposition that Plaintiffs had an obligation to confirm Hennesey's agency status with ABM. However, this is not an accurate reading of *Schoenberger*. *Schoenberger* indicates that a third party has an obligation to verify the fact and extent of an agent's authority where the party has notice of the lack of an agent's authority. Here, however, ABM has submitted nothing that would put Plaintiffs on notice of Hennesey's lack of authority to act on ABM's behalf.

In sum, there is sufficient evidence to create a material issue as to whether Hennesey had apparent authority to act on behalf of ABM. Summary judgment on Plaintiffs' Complaint is not warranted on the ground that Hennesey was not an agent of ABM.[1]

---

[1]Because there is sufficient evidence to demonstrate apparent authority, it is not necessary to determine whether Hennesey also had authority to bind ABM on the other theories Plaintiffs argue, including implied actual authority and on the basis of a "direct participation theory." See *Forsythe v. Clark USA, Inc.*, 864 N.E.2d 227, 224 Ill.2d 274 (Ill. 2007).

7

*Promissory Estoppel*

ABM next argues that it is entitled to summary judgment on Plaintiffs' claim for promissory estoppel.

The Illinois Supreme Court has recently acknowledged that an affirmative cause of action for promissory estoppel exists under Illinois law. *See Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 528 (Illinois 2009) (*Newton*).[2] To establish the claim, the plaintiff must prove: (1) defendant made an unambiguous promise to plaintiff; (2) plaintiff relied on such promise; (3) plaintiff's reliance was expected and forseeable; and (4) plaintiff relied on the promise to its detriment. *Newton*, 906 N.E.2d at 523-24.

ABM first argues it is entitled to summary judgment on this claim because the promise alleged by Plaintiffs – that Plaintiffs would be awarded the structural drying jobs in the Cayman Islands – was a "conditional" promise and required that Plaintiffs actually make their equipment available for use in the Cayman Islands. ABM contends this condition was not satisfied because Plaintiffs refused to release their equipment once it arrived in the Cayman Islands after Hennesey refused to sign a "work authorization," which Hennesey was not under any obligation to sign in absence of a contract between the parties.[3] ABM cites authority for the proposition that a conditional promise cannot be the basis of a promissory estoppel claim.

---

[2] In light of *Newton*, ABM's argument, raised earlier in the case, that promissory estoppel is not a valid affirmative cause of action in Illinois, now lacks merit.

[3] Thus, ABM contends it was Plaintiffs' own fault that the deal was not consummated.

Plaintiffs contend ABM's argument is a red herring. They contend ABM made to Plaintiffs the unambiguous promise that Plaintiffs would perform the scoped structural drying work if Plaintiffs shipped their equipment. In that Plaintiffs' asserted version of ABM's promise is unconditional and is supported by sufficient evidence in the record, including the undisputed fact that Plaintiffs thereafter shipped twenty tons of equipment across the Caribbean to the Cayman Islands, there is a material issue of fact as to the nature of ABM's promise. Summary judgment is not warranted on the grounds that ABM's promise was "conditional" as ABM argues.

ABM next contends Plaintiffs' promissory estoppel claim fails because ABM's alleged promise is ambiguous and Plaintiffs, who were sophisticated businessmen, could not reasonably rely on a promise that "a deal will go through." According to ABM, Plaintiffs could only have understood Hennesey's alleged promise as "a signal of Hennesey's hopes and intentions" that the deal would go through, not an unambiguous promise that a deal would result. ABM cites *Garwood Packaging, Inc. v. Allen & Co., Inc.*, 378 F.3d 698 (7th Cir. 2004) (*Garwood*). *Garwood*, applying Indiana law, granted summary judgment on a promissory estoppel claim, finding that a corporation's sophisticated prinicipals could not have reasonably understood a promise by a potential investor that he would see a deal through "come hell or high water" as an unequivocal promise that an investment deal would materialize. The court held that, although ordinarily the question whether a plaintiff reasonably understood a statement to be a promise is a question of fact not appropriately resolved on summary judgment, summary judgment was appropriate in the case because the statement, in an investment context,

that a deal will go through "come hell or high water" could only be viewed as a signal of a hope or intention for the deal to happen and could not reasonably be understood as an unequivocal promise that it would.

ABM contends this case is similar to *Garwood*. However, this case is distinguishable. This is not a situation in which a statement was made about a potential investment, and the statement allegedly made was not that something would occur "come hell or high water." Rather, Plaintiffs' position is that Hennesey unequivocally promised them that if they shipped their equipment to the Cayman Islands, as they did, they would perform the structural drying services assessed by Vogelsang. These facts are sufficient to create material issues as to whether Hennesey's statements to them constitute a promise and whether Plaintiffs reasonably relied on the statements in shipping their equipment to the Cayman Islands. Accordingly, unlike in *Garwood*, summary judgment is not appropriate on Plaintiffs' promissory estoppel claim.[4]

For the reasons stated above, ABM's motion for summary judgment is denied as to Count I.

*Misappropriation of Trade Secrets*

A "trade secret" is defined by the Illinois Trade Secret Act as follows:

(d) "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

---

[4]Material issues also exist with respect to Hennesey's refusal to sign a "work authorization" or "paperwork" regarding Plaintiffs' equipment once Plaintiffs' equipment arrived in the Cayman Islands, particularly, as to the nature of the paperwork and whether Hennesey promised to sign it.

10

> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILC 1065/2(d).

Thus, to show that certain information constitutes a trade secret under Illinois' Trade Secrets Act, a plaintiff must show: (1) that its information is sufficiently secret to give it a competitive advantage; and (2) that it takes affirmative measures to prevent others from acquiring or using the information. *Stenstrom Petroleum Services Group v. Mesch*, 874 N.E.2d 959, 971 (Ill. App. 2007) (*Stenstrom*). In addition to these requirements of the Act, Illinois courts often consider the following six common-law factors when determining whether a trade secret exists: (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which it is known by employees and others involved in plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and the plaintiff's competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease of difficulty with which the information could be properly acquired or duplicated by others. *Id.* at 972.

ABM argues it is entitled to summary judgment on Plaintiffs' trade secrets claim because the specifications and methodologies alleged to have been misappropriated do not constitute "trade secrets"; and Plaintiffs further took no steps to protect the information's confidentiality, either before or during this litigation.

ABM contends – and Plaintiffs do not dispute – that the only information Plaintiffs provided to Hennesey appears at Exhibits I, J, and K to ABM's statement of facts. Exhibits J and K are the estimates provided by Plaintiffs for the work at issue, which state the equipment needed to perform the work and pricing information. Exhibit I is one of PHVAC's job "protocols."

ABM contends none of this information constitutes a trade secret but, rather, is information that could be calculated and determined based on generally available industry-wide standards and knowledge. ABM relies on the testimony of Joseph Schroeder, Dryco's designated representative under Fed. R. Civ. P. 30(b)(6) and Vogelsang, who both testified that Dryco's estimates did not disclose Plaintiffs' underlying methodology of how to perform the work involved. (Schroeder Dep., 90-91; Vogelsang Dep., 56.) Schroeder testified that other qualified people in the industry could prepare the estimates. (Schroeder Dep., 93-94.) Vogelsang testified that PHVAC's "protocol" is based on the industry standard and could be looked up. (Vogelsang Dep., 75-79.)

Plaintiffs do not dispute that they did not disclose to Hennesey and Swanson their proprietary methodology or that the information they provided to them could not be independently determined. Rather, Plaintiffs contend the information they provided to Hennesey constitutes trade secrets because Hennesey and Swanson found it valuable and could not themselves determine it. Plaintiffs rely on *Stenstrom*'s statement that "[i]nformation that is derived from public sources but requires laborious accumulation, culling, and/or analysis of the public information can, however, still qualify as a trade

secret." *Stenstrom*, 874 N.E.2d at 972. They assert that the evidence in the case shows that Plaintiffs' information "was developed through the time consuming processing of information gathered by Vogelsang and Holdridge, two highly trained experts in the field." However, ABM persuasively argues that Plaintiffs have not pointed to evidence in the record sufficient to create a triable issue on this point. Plaintiffs' evidence indicates only that Vogelsang and Holdridge spent three or four hours at every site, "taking readings, measures and discussing the best methods and protocols to develop the scopes that they sent to Dryco." (Pltf. SMF, ¶ 38.) While items such as "customer lists, pricing information and business techniques can be trade secrets if the employer has developed the information over a number of years at great expense and kept it under tight security," Plaintiffs have not shown that the information they provided to Hennesey was so derived and is not sufficient to demonstrate this information constitutes a trade secret. *See Stenstrom*, 874 N.E.2d at 973 (citing *Abbot-Interfast Corp. v. Harkabus*, 250 Ill. App.3d 13, 22 (Ill. App. 1993)).

Even assuming Plaintiffs' evidence were sufficient in this regard, Plaintiffs have not met their burden of demonstrating evidence sufficient to show the second element of a misappropriation of trade secrets claim, that they took reasonable steps to prevent others from acquiring or using the information. Plaintiffs make no attempt in their opposition brief, to address this element. They do not dispute ABM's assertions that Plaintiffs required no confidentiality agreements with Hennesey or Swanson (nor did they have confidentiality agreements with their own employees), did not label any of their documents as confidential, and did not seek any protective order in this litigation.

Plaintiffs state, in their statement of facts, that "Dryco protects [its] method and protocol in various ways" and that it is "industry custom" for a company's drying methods to remain confidential, for which they cite Schroeder's deposition. (Ptf SMF, ¶¶ 33, 35.) Schroeder's testimony, however, was that the sum total of his efforts to keep Dryco's methodology confidential is that he simply did not explain his methodology to others and hoped and expected that PHVAC would do the same. (Schroeder Dep., at 96-97.) This, simply, is insufficient to demonstrate that Dryco and PHVAC took reasonable steps or affirmative measures to prevent others from acquiring or using their information, as required by *Stenstrom*.

Plaintiffs have failed to come forward with sufficient evidence to withstand summary judgment on their claim that ABM misappropriated their trade secrets under 765 ILCS 1065 *et seq.*, and ABM is entitled to summary judgment on the claim.

## CONCLUSION

For all of the reasons stated above, ABM's Motion for Summary Judgment is denied as to Plaintiffs' claim for promissory estoppel (Count I) but granted as to Plaintiffs' claim for misappropriation of trade secrets (Count II).

Date: October 16, 2009

JOHN W. DARRAH
United States District Court Judge